UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------

LIMITED STORES, LLC and
LIMCO, INC.,

                Plaintiffs,

        v.

QUIKSILVER, INC.,

                Defendant.

------------------------------------------------

JUDGE MARRERO

Civil Action No.: 07 CV 2835

APR 09 2007
U.S.D.C. S.D. N.Y.
CASHIERS

## COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, TRADEMARK DILUTION, AND DECEPTIVE TRADE PRACTICES

        Plaintiffs, LIMITED STORES, LLC and LIMCO, INC. (collectively, "plaintiffs" or "Limited"), by their attorneys, for their complaint against defendant, QUIKSILVER, INC., allege as follows:

### NATURE OF ACTION

        1.    Plaintiffs have been using the trademark and trade name LIMITED in connection with the marketing and manufacture of high quality apparel for more than forty years. Plaintiffs have a distinct reputation under the LIMITED name among consumers and the apparel trade. Recently, defendant publicly announced that it was appropriating the term LIMITED for its own use as a label for a clothing line. Defendant's new line focuses almost exclusively on plaintiffs' LIMITED trademark, such that consumers are likely to be confused or deceived into believing that defendant and defendant's garments are somehow connected or associated with plaintiffs and their LIMITED garments. Defendant invites the confusion by repeatedly emphasizing "Limited" in advertising, promotion, and on the garments themselves.

2.      The primary purpose of this lawsuit is to obtain injunctive relief to stop defendant from the deliberate and intentional infringement and dilution of plaintiffs' LIMITED trademark and trade name and from engaging in acts of unfair competition in falsely implying that defendant's line of LIMITED clothing and accessories, which defendant currently is distributing and selling, is associated with plaintiffs and their longtime, continuous use of the LIMITED trademark and trade name for clothing.  Unless defendant is enjoined from further misappropriation of plaintiffs' goodwill, plaintiffs will suffer substantial and irreparable harm.

## THE PARTIES

3.      Plaintiff Limited Stores, LLC ("Limited Stores") is a Delaware limited liability company, having its office and principal place of business at Three Limited Parkway, Columbus, Ohio 43230.  It is the operator of The Limited retail store business described below.

4.      Plaintiff Limco, Inc. ("Limco") is a Delaware corporation, having its principal office and place of business at 1105 North Market Street, Wilmington, Delaware 19801.  It is the owner of THE LIMITED trademarks as more fully described below.

5.      Defendant, Quiksilver, Inc., is a Delaware corporation, having its principal office and place of business at 15202 Graham Street, Huntington Beach, California 92649.

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction over plaintiffs' federal claims and the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), and 15 U.S.C. § 1121.  In addition, this Court has pendent jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7.      This Court has personal jurisdiction over defendant in that it does business in the State of New York and in this District.

8.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because the acts and transactions complained of out of which the claims asserted herein arise have occurred, are occurring, and unless enjoined will continue to occur in this District, and defendant is a corporation subject to personal jurisdiction in this judicial district, and therefore, resides in this District for purposes of venue.

## FACTS COMMON TO ALL CLAIMS

### THE LIMITED and LIMITED Marks and Trade Name

9.      Long prior to the acts of defendant alleged herein, plaintiffs and their predecessors adopted and have continuously used since 1963 the trade name, trademark and service mark THE LIMITED and LIMITED on and in connection with the manufacture and sale in interstate commerce of high-quality, fashionable merchandise, including apparel, designed, developed and marketed for women.

10.      Plaintiffs operate approximately 260 mall-based retail stores throughout the United States under the trademark and service mark THE LIMITED.  Since long prior to the acts of defendant alleged herein, The Limited has continuously used and now is using THE LIMITED trademark as its house mark on all of its merchandise, which it sells in its THE LIMITED stores.

11.      Limited Stores is the exclusive licensee of Limco with regard to the trademark, service mark and trade name THE LIMITED ("THE LIMITED Mark").  Limco is the record owner of the registered trademark THE LIMITED, which is the subject of registrations in the United States Patent and Trademark Office, including the following that cover clothing:

| Trademark | Reg. No. | Reg. Date |
|---|---|---|
| THE LIMITED | 1,020,794 | September 16, 1975 |
| THE LIMITED | 2,234,267 | March 23, 1999 |

The aforesaid registrations are valid, subsisting, in full force and effect, and incontestable. Copies of above registrations are annexed hereto and incorporated herein by reference as Exhibit A.

12.     Today, Limited Brands, Inc. ("Limited Brands"), the parent company of Limited Stores and other famous brands, including Victoria's Secret, Bath & Body Works, Express and Henri Bendel, owns and operates nearly 3,800 retail stores throughout the United States, whose collective net sales were $10.671 billion for the fiscal year 2006.

13.     In fiscal year 2006, Limited Stores' net sales of merchandise bearing the THE LIMITED Mark was $493.4 million.  Since its founding more than forty years ago, Limited and its predecessors have sold millions of garments bearing the THE LIMITED Mark.  As a result of such extensive sales, the public and the trade have come to identify and associate THE LIMITED Mark with plaintiffs as the source or origin of said merchandise and as a means whereby said merchandise is distinguished from similar merchandise of other companies.  In addition, since 1990, Limited Stores has expended hundreds of millions of dollars on the advertising and promotion of THE LIMITED merchandise, THE LIMITED Mark, and LIMITED Trade Name, and plaintiffs have realized billions of dollars from sales of goods so marked.

14.     As a result of the extensive advertising, promotion and sale of merchandise under THE LIMITED Mark, and because of the superior quality of such merchandise, THE LIMITED Mark has become a well-known and famous trademark, and has therefore acquired secondary meaning and goodwill of inestimable value.

15.     Plaintiffs also have established common law rights in and to the trademark and trade name LIMITED, which is used on and connections with promotional materials, gift

cards and charge cards as well as internally within the business.  The trade name LIMITED ("the LIMITED Trade Name") is the dominant part of various trade names used by plaintiffs, their predecessors, and affiliates, such as Limited Stores, The Limited, Inc., which is the predecessor of Limited Brands, Inc., and Limited Brands Store Operations, Inc.  Plaintiffs have used both the LIMITED Mark and Trade Name in marketing materials and the media.  Hence, plaintiffs are known to consumers and to Wall Street as "Limited."  Limited Brands is traded over the New York Stock Exchange under the symbol LTD.  Due to continuous use of the LIMITED Trade Name, it has acquired secondary meaning in the marketplace.  THE LIMITED and LIMITED Marks and LIMITED Trade Name are referred to herein collectively as "the LIMITED Mark".

16.    Based on their wide promotion and extensive sales, the public, consumers, and the trade have come to recognize that products bearing the LIMITED Mark originate with plaintiffs, and the LIMITED Mark represents a visible symbol of the quality of goods bearing the mark.

## Quiksilver's Infringing Use of the LIMITED Mark

17.    Upon information and belief, defendant designs and distributes casual apparel and accessories for men, women and children under the QUIKSILVER mark.

18.    Defendant's products are sold in specialty stores, department stores, surf shops and defendant's own stores.

19.    In or around February 2007, defendant announced plans to launch a new line for the summer of 2007 named, "The Limited Collection".  Defendant introduced its Limited Collection to the trade and retail buyers at the MAGIC trade show in Los Angeles.  Upon information and belief, defendant's new collection will feature denim and non-denim bottoms, button-front woven tops, knits, outerwear, shorts, jackets, hats and belts.  Attached as Exhibit B

is a true and accurate copy of an article from the February 12, 2007 edition of the trade

publication DNR that describes the new line.

20.    On defendant's website, www.quiksilver.com, defendant was promoting

this new line in a manner that prominently featured the LIMITED Mark as the most significant

element. A true and accurate copy of the first page from the "Limited Main" page that had

appeared on defendant's website in February and March 2007 is attached as Exhibit C.

21.    On March 2, 2007, plaintiffs objected to defendant's prominent use of the

LIMITED Mark based on the appearance of the website. A true and accurate copy of the March

2, 2007 letter to defendant is attached as Exhibit D. The letter noted that at the time, plaintiffs

had not yet seen the merchandise in the new line and asked defendant to provide "samples of

merchandise in the 'Limited Collection' line as well as labels, advertising and any other indicia

relating to this new line so that we may fully evaluate the matter."

22.    Counsel for defendant replied in writing on March 7, 2007 that

"Quiksilver had no intention whatsoever to take advantage of any goodwill in the mark THE

LIMITED" and that he expected "this matter will be amicably resolved shortly." When no

further response was received from Quiksilver, plaintiffs' counsel wrote again on March 20,

2007 to inquire of Quiksilver's position.

23.    Quiksilver's counsel advised in an email dated March 22, 2007 that

Quiksilver would "remove the objected to references to the term Limited from its website." A

true and accurate copy of the March 22, 2007 email is attached as Exhibit E. To date, however,

and in contrast to defendant's stated objective of reaching an amicable resolution, it has not

supplied plaintiffs with any samples of merchandise from defendant's new "Limited" collection

or with labels, advertising or any other indicia relating to the line, as plaintiffs' March 2, 2007 letter (Ex. D) requested.

24.     Defendant modified its website after plaintiffs objected to the repeated and prominent use of the LIMITED Mark.

25.     Defendant has affixed the LIMITED Mark on its apparel in a prominent manner and is offering for sale and selling these goods through its own stores and through third-party retailers. Attached hereto as Exhibit F are photographic images of tee shirts, button-down shirts, shorts and a sweatshirt from defendant's new line, each of which depicts the prominent use of the LIMITED Mark in the form of permanently affixed labels. In addition, at least three of the shirts include the LIMITED Mark not only as a permanent label printed onto each shirt, but also on hangtags affixed to these garments. A full-scale image of the hangtag appears immediately below and also may be seen among the garments depicted in Exhibit F:



26.     Defendant also distributes and sells a style of shorts that, in addition to bearing the LIMITED Mark as a permanently-affixed label, is accompanied by a belt featuring the LIMITED Mark imprinted thereon as a permanent marking.

27.     Defendant, without authorization or license from plaintiffs, has knowingly and willfully used, reproduced, and/or copied the LIMITED Mark in connection with distributing, exporting, importing, selling and offering to sell these goods ("the Infringing Products") in interstate commerce, including through the Internet.  Defendant's emphasis and, at times, sole use of the LIMITED Mark creates a likelihood of confusion among consumers that the Infringing Products are associated or connected with plaintiffs.

28.     Defendant has knowingly manufactured, advertised, offered for sale, sold and distributed the Infringing Products in interstate, intrastate and foreign commerce, including in the State of New York and in this judicial district.

29.     Defendant's use of marks that dilute and infringe upon the LIMITED Mark on or in connection with the manufacturing, advertising, offering for sale and sale and distribution of the Infringing Products is likely to dilute the distinctive quality of the LIMITED Mark and/or cause confusion, or to cause mistake to deceive.

30.     Defendant is not authorized by plaintiff to manufacture, advertise, distribute, sell or offer to sell products bearing marks that infringe upon the LIMITED Mark.

31.     Defendant's conduct has caused and will continue to cause irreparable injury to plaintiffs unless enjoined by this Court.  Plaintiffs have no adequate remedy at law.

## COUNT ONE

### Federal Trademark Infringement - 15 U.S.C. § 1114

32.     Plaintiffs repeat and incorporate herein by reference each and every one of the averments contained in paragraphs 1 through 31, inclusive, of this complaint with the same force and effect as if hereinagain set forth in detail.

33.     Without plaintiff's authorization or consent, and having knowledge of plaintiffs' well-known and prior rights in THE LIMITED Mark, and the fact that defendant's goods bear marks that are confusingly similar to THE LIMITED Mark, defendant has manufactured, distributed, offered for sale and/or sold the Infringing Products to the consuming public in or affecting interstate commerce in a manner that is likely to cause confusion, mistake, or deception as to the true source or sponsorship of defendant's goods and services.

34.     Defendant's use of marks that infringe THE LIMITED Mark is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Infringing Products, and is likely to deceive the public into believing the Infringing Products originate from, are associated with/or are otherwise authorized by plaintiffs, all to the damage and detriment of plaintiffs' reputation and goodwill.

35.     Defendant's above-described actions constitute infringement of plaintiffs' trademarks in violation of their rights under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

## COUNT TWO

### Federal Unfair Competition/False Designation of Origin - 15 U.S.C. § 1125(a)

36.     Plaintiffs repeat and incorporate herein by reference each and every one of the averments contained in paragraphs 1 through 35, inclusive, of this complaint with the same force and effect as if hereinagain set forth in detail.

37.    The unauthorized use of plaintiffs' LIMITED Mark by defendant in interstate commerce misrepresents and falsely describes to the general public the origin and source of the Infringing Products and creates a likelihood of confusion among purchases as to both the source and sponsorship of such merchandise.

38.    Defendant's unlawful, unauthorized and unlicensed manufacturing, advertising, distributing, offering for sale and/or selling of the Infringing Products creates express and implied misrepresentations that falsely imply plaintiffs' authorization or approval of the Infringing Products, all to defendant's profits and plaintiffs' damage.

39.    Defendant's false, misleading and infringing activities are likely to cause confusion among the general public as to the origin or sponsorship of the Infringing Products.

40.    Defendant's wrongful actions constitute unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT THREE

### Federal Trademark Dilution - 15 U.S.C. § 1125(c)

41.    Plaintiffs repeat and incorporate herein by reference each and every one of the averments contained in paragraphs 1 through 40, inclusive, of this complaint with the same force and effect as if hereinagain set forth in detail.

42.    Plaintiff's LIMITED Mark is famous and well known throughout the United States within the meaning of 15 U.S.C. § 1125(c), and has been used nationally for more than forty years.

43.    Plaintiffs' LIMITED Mark has been famous prior to defendant's conduct as alleged herein.

44.    Defendant's above-described unlawful and infringing activities have caused or are likely to cause dilution of the distinctive quality of the famous LIMITED Mark in violation of plaintiffs' rights under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

## COUNT FOUR

### Trade Name Infringement

45.    Plaintiffs repeat and incorporate herein by reference each and every one of the averments contained in paragraphs 1 through 44, inclusive, of this complaint with the same force and effect as if hereinagain set forth in detail.

46.    Defendant has affixed, applied and used or intends to affix, apply and use the LIMITED Trade Name in connection with the sale of apparel and accessories in interstate commerce in the United States, to plaintiffs' detriment.

47.    Defendant has improperly taken orders for apparel bearing the term LIMITED with the intent to cause confusion and mistake, to deceive and mislead the purchasing public and to improperly appropriate plaintiffs' valuable trade name rights in the LIMITED Trade Name.

48.    The acts of the defendant described herein were undertaken without the permission, license or consent of plaintiffs and have caused and are causing damage to plaintiffs.

49.    The acts of the defendant's described herein are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of defendant with plaintiffs, or as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by plaintiffs in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

50.    By reason of the acts of the defendant alleged herein, plaintiffs have, and will, suffer irreparable damage to their reputation and a loss of sales and profits that plaintiffs would have made but for said acts of defendant.

51.    Defendant has been unjustly enriched, and plaintiffs are entitled to an accounting of the profits of the defendant.

## COUNT FIVE

### New York Trademark Dilution - New York General Business Law § 360(l)

52.    Plaintiffs repeat and incorporate herein by reference each and every one of the averments contained in paragraphs 1 through 51, inclusive, of this complaint with the same force and effect as if hereinagain set forth in detail.

53.    Defendant's acts have caused damage to plaintiffs by tarnishing plaintiffs' valuable reputation and diluting or blurring the distinctiveness of plaintiffs' LIMITED Mark in violation of New York General Business Law §360(l), and will continue to tarnish and destroy the value of plaintiffs' LIMITED Mark unless enjoined by this Court.  Plaintiffs have no adequate remedy at law.

## COUNT SIX

### Unlawful Deceptive Acts and Practices - New York General Business Law § 349

54.    Plaintiffs repeat and incorporate herein by reference each and every one of the averments contained in paragraphs 1 through 53, inclusive, of this complaint with the same force and effect as if hereinagain set forth in detail.

55.    Upon information and belief, defendant, without plaintiffs' authorization or consent, and having knowledge of plaintiff's well-known and prior rights in the LIMITED

Mark, has manufactured, advertised, distributed, offered for sale and/or sold the Infringing

Products to the consuming public in violation New York General Business Law § 349.

56.     Defendant's use of copies or simulations of the LIMITED Mark is likely

to cause and is causing confusion, mistake and deception among the general purchasing public as

to the origin of the Infringing Products, and is likely to deceive the public into believing the

Infringing Products being sold by defendant originate from, are associated with or are otherwise

authorized by plaintiffs.

57.     Defendant's deceptive acts and practices involve public sales activities of

a recurring nature.

58.     Upon information and belief, defendant has knowingly and willfully

engaged in the deceptive acts and practices outlined herein.

59.     Plaintiffs have no adequate remedy at law and, if defendant's activities are

not enjoined, plaintiffs will continue to suffer irreparable harm and injury to its goodwill and

reputation.  As a direct and proximate result of defendant's deceptive acts and practices,

plaintiffs have been and continue to be injured in their business and are therefore entitled to

injunctive relief, attorney's fees and other remedies pursuant to New York General Business Law

§ 349.

## **COUNT SEVEN**

### **New York Common Law Trademark Infringement**

60.     Plaintiffs repeat and incorporate herein by reference each and every one of

the averments contained in paragraphs 1 through 59, inclusive, of this complaint with the same

force and effect as if hereinagain set forth in detail.

61.    Plaintiffs have built up valuable goodwill in the LIMITED Mark, and the public has come to associate the LIMITED Mark with plaintiffs' products, as a symbol of their reputation for quality.

62.    Defendant has unlawfully used marks that are confusingly similar to the LIMITED Mark, and such use constitutes trademark infringement in violation of the common law of New York.

63.    Defendant's activities are designed with the intent to mislead and/or deceive the trade and public into believing that the Infringing Products are affiliated with, authorized, endorsed, sponsored and/or sanctioned by plaintiffs or are connected or associated in some way with plaintiffs, which they are not.  Such acts have caused and continue to cause confusion as to the source and/or sponsorship of the Infringing Products.

64.    The acts and conduct of defendant complained of herein have damaged plaintiffs and will, unless enjoined, further impair, if not destroy, the value of the LIMITED Marks and the goodwill associated therewith.

65.    Defendant has engaged and continues to engage in this activity knowingly and willfully.

66.    Defendant's acts of common law trademark infringement and unfair competition, unless enjoined by this Court, will continue to cause plaintiffs to sustain irreparable damage, loss and injury for which plaintiffs have no adequate remedy at law.

## COUNT EIGHT

### New York Common Law Unfair Competition

67. Plaintiffs repeat and incorporate herein by reference each and every one of the averments contained in paragraphs 1 through 66, inclusive, of this complaint with the same force and effect as if hereinagain set forth in detail.

68. Plaintiffs, by virtue of their prior adoption and use in interstate commerce of the LIMITED Mark in this judicial district and elsewhere, has acquired, established, and owns common law trademark and service mark rights in the LIMITED Mark, which serve to identify to the public certain goods and services that are offered only by plaintiffs and the goods and services offered in connection with the mark are regarded by the public as being offered by, sponsored by, approved by, authorized by, associated with, or affiliated with plaintiffs.

69. Defendant has intentionally and unlawfully copied and used the LIMITED Mark, without authorization, for the calculated purpose of passing off its goods and services as those of plaintiffs, of trading upon the significant goodwill and reputation of plaintiffs, and of deceiving the public as to the true nature and characteristics of defendant's products, and falsely suggest a connection with plaintiffs, all to defendant's profit and to the damage and detriment of plaintiffs.

70. Defendant's past and continued use of the LIMITED Mark constitutes copying and imitation of the LIMITED Mark, falsely designates the origin of the Infringing Products, and is likely to cause consumer confusion, mistake, or deception.

71. Defendant's conduct constitutes unfair competition under the common law of the State of New York.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, plaintiffs pray for the following relief:

A.     That defendant, its officers, agents, servants, employees and attorneys, and all those acting in active concert or participation with them or any of them, be preliminarily and permanently enjoined and restrained from the following activities:

(i)     Using in any manner the marks that infringe upon plaintiffs' LIMITED Mark, as to be likely to cause confusion, deception, or mistake on or in connection with the manufacturing, advertising, distributing, offering for sale, or selling of any product not plaintiffs' or not authorized by plaintiff to be sold in connection with any goods of plaintiffs;

(ii)     Passing off, inducing, or enabling others to sell or pass off any product as and for products produced by plaintiffs, that are not plaintiffs' or not produced under the control and supervision of plaintiffs and approved by plaintiffs for sale under the LIMITED Mark;

(iii)     Producing, buying, selling, transferring, using or handling labels or other markings referring or relating in any way to plaintiffs or their marks;

(iv)     Infringing plaintiffs' LIMITED Mark on or in connection with the advertising, offering for sale, or sale of any goods or services;

(v)     Representing, suggesting or committing any acts calculated to cause purchasers to believe that the Infringing Products are those sold under the control and supervision of plaintiffs or sponsored or approved by, or connected with or guaranteed by, or produced under the control and supervision of plaintiffs by plaintiffs or that defendant has any relationship whatsoever, whether direct or indirect with plaintiff;

(vi)     Otherwise competing unfairly with plaintiffs;

(vii)    Further diluting and infringing plaintiffs' famous LIMITED Mark and damaging plaintiff's goodwill; and

(viii)    Engaging in deceptive trade practices.

B.    That defendant be required forthwith to deliver up for destruction its entire inventory of Infringing Products and any advertising or promotional materials and labels or hangtags bearing the LIMITED Mark or a confusingly similar copy thereof;

C.    That defendant be ordered pursuant to 15 U.S.C. §1116(a) to file with the Court and serve upon plaintiffs, within thirty (30) days of the entry of the injunction prayed for herein, a report in writing under oath setting forth in detail the form and manner in which it has complied with the permanent injunction;

D.    That defendant be required, pursuant to 15 U.S.C. §1117, to account to plaintiff for any and all profits derived by defendant, and for all damages sustained by plaintiffs by reason of defendant's acts complained of herein and that the amount of damages for infringement of plaintiffs' LIMITED Mark be increased by a sum not exceeding three times the amount thereof as provided by law;

E.    That defendant be ordered to pay plaintiffs punitive damages in a sum to be determined at trial on the basis of deliberate and intentional infringement, unfair competition, dilution and fraud;

F.    That, pursuant to 15 U.S.C. §1117, plaintiffs have and recover from defendant all of plaintiffs' reasonable attorneys' fees, costs and disbursements of this civil action; and

G.    That plaintiffs have such other and further relief as the Court may deem just and proper.

Dated:    New York, New York
             April 9, 2007

                    **COLUCCI & UMANS**

                    By:

                    Frank J. Colucci (FC-8441)
                    Richard P. Jacobson (RJ-2843)
                    218 East 50th Street
                    New York, New York 10022
                    Telephone: (212) 935-5700
                    Facsimile: (212) 935-5728
                    Email:  email@colucci-umans.com

                    Attorneys for Plaintiffs

Int. Cl.: 25

Prior U.S. Cl.: 39

United States Patent and Trademark Office

10 Year Renewal

Reg. No. 1,020,794
Registered Sep. 16, 1975
Renewal Term Begins Sep. 16, 1995

## TRADEMARK
## PRINCIPAL REGISTER

## THE LIMITED

LIMCO, INC. (DELAWARE CORPORA-
TION)
1105 NORTH MARKET STREET
WILMINGTON, DE 19801, BY ASSIGN-
MENT AND CHANGE OF NAME
FROM LIMITED STORES, INC., THE
(OHIO CORPORATION) COLUMBUS,
OH

FOR: WOMEN'S AND MISSES'
CLOTHING—NAMELY, DRESSES,
COATS, SKIRTS, SLACKS, BLOUSES,
SHIRTS, SCARFS, BELTS, HATS, [UN-
DERWEAR,] HOSIERY AND SHOES, IN
CLASS 39 (INT. CL. 25).
FIRST USE 8-0-1963; IN COMMERCE
10-0-1968.

SER. NO. 72-443,857, FILED 12-15-1972.

*In testimony whereof I have hereunto set my hand
and caused the seal of The Patent and Trademark
Office to be affixed on Mar. 5, 1996.*

COMMISSIONER OF PATENTS AND TRADEMARKS

Exhibit A

Int. Cls.: 18 and 25

Prior U.S. Cls.: 1, 2, 3, 22, 39 and 41

## United States Patent and Trademark Office

Reg. No. 2,234,267

Registered Mar. 23, 1999

## TRADEMARK
### PRINCIPAL REGISTER

## THE LIMITED

LIMCO, INC. (DELAWARE CORPORATION)
1105 NORTH MARKET STREET
WILMINGTON, DE 19801

FOR: HANDBAGS, IN CLASS 18 (U.S. CLS. 1, 2, 3, 22 AND 41).

FIRST USE 4–0–1986; IN COMMERCE 4–0–1986.

FOR: CLOTHING, NAMELY, SWEATERS, JEANS, T-SHIRTS, PANTS, SHORTS, SKORTS, JACKETS AND HEADBANDS, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 1–0–1963; IN COMMERCE 1–0–1963.

OWNER OF U.S. REG. NOS. 1,020,794, 1,509,769 AND OTHERS.

SER. NO. 75–455,894, FILED 3–24–1998.

ANGELA M. MICHELI, EXAMINING ATTOR-NEY

San Diego — Surfers are notorious for guarding their turf, but now they can do it in a literal way. Some of the surf world's most prominent labels are joining forces under Project Blue, a venture set to raise $1 million in its first three years for the preservation of oceans, waves and beaches.

Initiated by the Surfrider Foundation, a nonprofit organization focused on ocean conservation, Project Blue has enlisted five major surf-oriented vendors to create specific Project Blue products. The campaign includes Billabong boardshorts, Dakine backpacks, Nixon watches, Reef sandals and Electric sunglasses, and is set to hit stores in June 2007. Two dollars from each Project Blue product will be donated to the organization.

Matt McClain, the Surfrider Foundation's marketing director, explained although surf brands have been longtime supporters of ocean preservation, Project Blue enables them to address the consumer directly. "Surfers seem to be on the cutting edge of saving the planet," he said. "This is a low-friction way for people to get involved."

Each product will have a specific Project Blue colorway or style as well as a hangtag explaining its association. But even if a consumer doesn't recognize merchandise as Project Blue-related, "the products are all from the best brands in their categories, so people may contribute to the cause without even realizing it," said Vipe Desai, Project Blue's founder and president of Propaganda Headquarters. "It's a win-win situation."



Dakine

Desai pointed to Product Red, a campaign that invokes consumer consciousness to raise money to fight the AIDS epidemic in Africa, as his business model. The idea behind Product Red, as with Project Blue, is that if a consumer can make a responsible choice when shopping, he will.

Furthermore, Desai said, "The consumers of the Project Blue brands are in the water all the time, so saving the ocean is an ur for them."

Although the five brands currently on board have Pro in their categories initially, McClain and Desai believe the surf-related companies to get involved, from a wetsuit m manufacturer.

McClain hopes that Project Blue will encourage the in tively with ocean preservation. "If we don't change the c handle ocean preservation, the best we can hope is to ke water." —JESSICA PALLAY

---

# Quiksilver Debuts Upscale Limited Collection at MAGIC



**Limited**
Summer 2007 Collection

**LOS ANGELES** — Quiksilver has heard the call of the street and responded accordingly. The board-sport behemoth is launching a limited collection of upscale sportswear in the young men's contemporary section of MAGIC, including a small assortment of denim and non-denim bottoms, button-front wovens, knits and outerwear with subtle details like 14-karat-gold-brushed snaps, contrasting cuffs and collar taping, and Riri zippers.

"It's high street fashion with a surf-type twist," said Quiksilver's design director, Steve Fontes. "And it's geared toward a guy who might be a little bit older and have a little bit more money than our normal Quiksilver customer." He said Quik's core demo is 15 to 25 and the new line, called the Limited Collection, targets the 20- to 30-year old. Prices are also higher, with boardshorts ranging from $85 to $90, wovens from $90 to $120 and T-shirts at $60.

Fontes said the line, which has already been shown to key accounts, is aiming for the high-end specialty store channel, "like a Barneys New York or Fred Segal. This isn't stuff you'll see in one of our normal surf accounts."

The debut summer '07 collection consists of just 30 pieces, a limited color palette of black, white, gray and magenta (which the company refers to by the more manly sounding "cranberry") and a focus

**Quiksilver's Limited Collection**



on details such as rivets, stitching, darts and lining. Key items include a cotton, yarn-dyed trouser with polka-dot-print pocket bags, waistband and cuff taping (Blue Beat, $120 retail), an allover dagger-and-X print hoodie with a polka-dot-lined hood and patterned Riri zipper (Pure Class, $200) and the line's priciest entry: a cashmere four-button cardigan with tonal embroidered crests and a polka-dot collar lining (Mistorrogers) that retails for $225. The Limited line is expected to roll out for summer/fall, holiday and spring.

"It's got the level of detail where, even after you've worn it a few times, you'll still discover details you haven't seen before," said Fontes. And one of those discoveries might well be the Quiksilver logo—on the Limited Collection it has shrunk to the size of a pencil eraser; tucked unobtrusively on sleeves, waistbands and buttons. "We really want the product to speak for itself," Fontes said. —**ADAM TSCHORN**

---

# Tommy Bahan Gets in the Sp

Nothing says "island lifestyle" like a rum drink, so it's fitting that among a quartet of recently inked Tommy Bahama licenses is one for an ultra-premium Barbadian rum that will bear the brand's name. Set to launch for spring '07, Tommy Bahama Rum was created in partnership with Sidney Frank Importing Co. and produced by the Barbados-based R.L. Seale Distillery. Packaged in hand-decorated bottles bearing the TB palm-tree logo, the rum will be available in two flavors: "White Sand" (aged two years) and "Golden Sun" (aged three years). MAGIC attendees can get a jump-sip on the general public: Tommy Bahama Rum is the featured spirit at Tuesday's opening-night party.

In addition, the Seattle-based subsidiary of Oxford Indus Mulberry Neckwear to produce a TB neckties rolling out for fall '07 ( licensee Paradise Neckwear), and e ment with Oxford Apparel Group to dress-shirt arena for fall '07. A fou Windbrella, will be manufacturing las, which debut this spring. —A.T.

Exhibit B



enter email address

home   stores   search   international

products   events   team   galleries   happenings   movies   music   more...

Home   Products   Limited

## Products

Brandshorts

Wallshorts

Jackets

### About Limited

#### Limited Spring 2007 Collection

The Limited Collection is the Quiksilver designers' rack. This premium sub-line, a specialized, fashion conscious line, limited and exclusive distribution. This direction, along with the line's use of high-end and organic materials, reinforce Quiksilver's status as a leader and innovator in the marketplace. The Limited Collection offers specialized products used as an avant garde incubator for future designs.

2/27/2007

http://www.quiksilver.com/products/limited_main.aspx

Exhibit C

COLUCCI & UMANS

218 EAST 50TH STREET
NEW YORK, NEW YORK 10022-7681

TELEPHONE (212) 935-5700
FACSIMILE (212) 935-5728
email@colucci-umans.com
www.colucci-umans.com



KENNETH R. UMANS
(1944-1998)

FRANK J. COLUCCI, P.C.
COURTNEY WILSON MONAHAN, P.C.
W. BRANT MOSSOP, P.C.
GREGORY J. COLUCCI, P.C.
RICHARD P. JACOBSON, P.C.
DAVID M. DAHAN, P.C.
SUSAN B. JACOBSON
KATHLEEN M. McGANN
GEORGANN M. CALLAGHAN
MICHAEL J. PAMPALONE, III
MARY G. FONTENOT

OF COUNSEL

NOTARO & MICHALOS P.C.

WESTCHESTER OFFICE

670 WHITE PLAINS ROAD
SCARSDALE, NEW YORK 10583-5025
TELEPHONE (914) 472-1500
FACSIMILE (914) 472-1551
scarsdale@colucci-umans.com

March 2, 2007

**VIA FEDEX**

Quiksilver, Inc.
Attn: Legal Dep't Trademarks
15202 Graham Street
Huntington, Beach, California 92649-1109

Re:    Trademark THE LIMITED
       Our File No. C700-005

Dear Sir or Madam:

We are Intellectual Property Counsel to Limited Brands, Inc. ("Limited Brands") and its wholly-owned subsidiaries The Limited Stores, Inc. ("Limited Stores") and Limco, Inc. ("Limco"), the exclusive user and record owner, respectively, of THE LIMITED trademark, all of which are referred to collectively herein as "Limited". THE LIMITED trademark is the subject of numerous registrations worldwide in International Class 25, which encompasses clothing and apparel, including United States Reg. Nos. 1,020,794 and 2,234,267. These registrations are valid, in full force and effect and incontestable. Copies of the registration certificates are attached as Exhibit A.

Limited traces its history back to 1963 when Leslie Wexner established in Columbus, Ohio the first store named THE LIMITED. That single shop ultimately evolved into Limited Brands, a $9.6 billion business that houses some of the most famous apparel and beauty brands in the marketplace. Limited Stores continues to operate more than 290 specialty retail stores under THE LIMITED trademark throughout the United States with a total of 1.7 million selling square feet. THE LIMITED trademark is famous, well-known and carries enormous goodwill.

Limited recently learned of Quiksilver's plans to launch "The Limited Collection" in the summer of 2007. Quiksilver apparently debuted its Limited Collection last month at the MAGIC trade show in Los Angeles. Attached as Exhibit B is a copy of an article from the February 12, 2007 edition of DNR that describes the new line.

**Exhibit D**

COLUCCI & UMANS

Quiksilver, Inc.                    -2-                    March 2, 2007

According to the DNR article, this new collection will feature denim and non-denim bottoms, button-front wovens, knits and outerwear. This is confirmed on your website, www.quiksilver.com, where the Products button has a link called "Limited" which leads to the "Limited Main" page featuring the full range of apparel in the line, the first page of which is attached as Exhibit C. In addition to the bottoms and knit and woven tops described in the DNR article, The Limited line evidently also includes shorts, jackets, hats and belts. There is even a board short "Poki Salad Limited," as depicted in Exhibit D. Notably, all these items are identical to the goods included in Limited's aforementioned trademark registrations.

The most prominent element on Quiksilver's Limited Main page (Exhibit C) is the word "Limited" presented in large script letters in the upper left corner of some sort of artwork featuring a woman, a snake, a skull, and flowers along with abstract elements. The artwork is rectangular in shape, approximately 9½ inches wide and 3½ inches on its vertical axis. "Limited" is the only text within this 33¼ square-inch area and comprises roughly 6¾ square inches, or more than 20% of the space within the artwork. Your use of "Limited" also stands out in the artwork because it is presented in thick, black script lettering accentuated by white and light blue shadowing. Since the artwork contains more muted tones with little color, "Limited" pops out at the viewer much more so than the subtle details in the artwork. Although on the screen the Quiksilver stylized word mark appears on the menu bar as a link to the home page, when this page is printed, however, the Quiksilver name appears nowhere near this use of "Limited". Furthermore, the word Collection is not used at all in this section of the website except for the the in the copy beneath the "About Limited" headline repeated in the following paragraph. Thus, it is apparent that Quiksilver intends to identify its new collection as "Limited" alone rather than in combination with other terms.

Although we have not been able to obtain a sample of the merchandise in your Limited Collection, we are concerned by the predominant use of "Limited" with the label as depicted in the DNR article. The word "Limited" is larger than the other text and logo that appear adjacent thereto. In addition, the Quiksilver website refers to the line as the "Limited Spring 2007 Collection" and "The Limited Collection," and even leads into the description of the product line with the headline, "About Limited," followed by the copy below:

**Limited Spring 2007 Collection**

The Limited Collection is the Quiksilver designers' rack. This premium sub-brand, a specialized, fashion conscious line, has limited and exclusive distribution. This direction, along with the line's use of some high-end and organic materials, reinforces Quiksilver's status as a leader and

COLUCCI & UMANS

Quiksilver, Inc.                      -3-                        March 2, 2007

innovator in the marketplace. The Limited Collection offers specialized products and is used as an avant garde incubator for future designs.

Quite frankly, we are surprised that a company with the brand recognition and success of Quiksilver's would have approved and adopted a merchandising program that so closely treads upon Limited's rights. It is apparent from the information we have thusfar that Quiksilver is not using "Limited Collection" in a descriptive sense. Rather, Quiksilver's use focuses primarily on "Limited" as a brand.

Our purpose in writing is to put Quiksilver on notice of Limited's objections and to obtain additional information to see how Quiksilver actually plans to market this line. We ask that you provide us with samples of merchandise in the "Limited Collection" line as well as labels, advertising and any other indicia relating to this new line so that we may fully evaluate the matter. Based on our current impression, however, we have serious concerns that such usage creates a strong likelihood of confusion.

We look forward to your prompt reply.

Very truly yours,

Frank J. Colucci

FJC/RPJ:km
Enc.

**Frank Colucci**

| | |
|---|---|
| **From:** | Berman, Rod S. [RXB@JMBM.com] |
| **Sent:** | Thursday, March 22, 2007 9:10 PM |
| **To:** | Frank Colucci |
| **Cc:** | Berman, Rod S. |
| **Subject:** | RE: Quiksilver and The Limited; Confidential Settlement Communication; Rule 408 |

Dear Frank:  While we do not believe Quiksilver's use of the term Limited violates any rights of your client, in the spirit of compromise between two sophisticated businesses, we are advised that Quiksilver either has or shortly will remove the objected to references to the term Limited from its website.  With this said, and reserving all of its rights in the event your client takes any further action, we consider the matter closed.  Regards, Rod

-----Original Message-----
**From:**  Berman, Rod S.
**Sent:**  Thursday, March 22, 2007 1:46 PM
**To:**  'fcolucci@colucci-umans.com'
**Cc:**  Berman, Rod S.
**Subject:**  Quiksilver and The Limited

Confirming our telephone conversation earlier today, I expect to be back to you no later than early next week with an amicable resolution.  Thanks for your patience.  Rod

Rod S. Berman
Chairperson, Intellectual Property Group
JMBM | Jeffer, Mangels, Butler & Marmaro LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067

(310) 201-3517 Direct
(310) 712-8517 Fax
RBerman@jmbm.com
JMBM.com

This e-mail message and any attachments are confidential and may be attorney-client privileged. Dissemination, distribution or copying of this message or attachments without proper authorization is strictly prohibited.  If you are not the intended recipient, please notify JMBM immediately by telephone or by e-mail, and permanently delete the original, and destroy all copies, of this message and all attachments. For further information, please visit JMBM.com.

Circular 230 Disclosure: To assure compliance with Treasury Department rules governing tax practice, we hereby inform you that any advice contained herein (including in any attachment) (1) was not written or intended to be used, and cannot be used, by you or any taxpayer for the purpose of avoiding any penalties that may be imposed on you or any taxpayer and (2) may not be used or referred to by you or any other person in connection with promoting, marketing or recommending to another person any transaction or matter addressed herein.

**Exhibit E**































